# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRISON SORMAN**, and **CONSTANCE SORMAN**,<br>           Plaintiffs, | :<br>:<br>:<br>: |
| v. | : **CIVIL ACTION**<br>:<br>: **NO. 21-1305** |
| **HAVERFORD AREA SCHOOL DISTRICT**,<br>           Defendant. | :<br>:<br>: |

## ORDER

**AND NOW**, this       day of                , 2021, upon consideration of the Motion to Dismiss Plaintiffs' Complaint, and any response thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.

                                                                                            **By the Court:**


                                                                                            _____
                                                                                                                                        , J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRISON SORMAN, and** : | |
| **CONSTANCE SORMAN,** : | |
| **Plaintiffs,** : | |
| : | |
| : | **CIVIL ACTION** |
| **v.** : | |
| : | **NO. 21-1305** |
| **HAVERFORD AREA SCHOOL** : | |
| **DISTRICT** : | |
| **Defendant.** : | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Haverford Area School District (the "District"), hereby files this Motion to Dismiss the Complaint of Plaintiffs, Harrison Sorman and Constance Sorman ("Harrison" or "Constance" or collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant incorporates the attached Memorandum of Law as if set forth at length herein. Defendant respectfully requests that this Honorable Court grant their Motion.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

Dated: May 28, 2021       **By:**   *Michael D. Kristofco*
                                     **MICHAEL D. KRISTOFCO, ESQUIRE**
                                     PA Bar Nos. 73148
                                     460 Norristown Road, Suite 110
                                     Blue Bell, PA  19422
                                     (610) 825-8400
                                     *Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARRISON SORMAN, and** : <br> **CONSTANCE SORMAN,** : <br>    **Plaintiffs,** : <br> : <br> :  **CIVIL ACTION** <br>    **v.** : <br> :  **NO. 21-1305** <br> **HAVERFORD AREA SCHOOL** : <br> **DISTRICT** : <br>    **Defendant** : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.    INTRODUCTION**

Defendant, Haverford Area School District (the "District"), seeks to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted for the reasons set forth below.

**II.   RELEVANT PROCEDURAL HISTORY AND**
**FACTUAL ALLEGATIONS IN THE COMPLAINT**

Plaintiffs filed this Complaint against the District on March 17, 2021 as a result of an assault he suffered from another student ("Student 1") on March 19, 2019.

In 2013, Harrison was evaluated by a psychologist and diagnosed with ADHD, primarily inattentive subtype. See Compl. (ECF 1) at ¶ 7. Plaintiffs allege that Harrison is a 20-year-old former student of the District who first enrolled in the District at the start of the 2016-2017 school year for his tenth-grade year. See Compl. (ECF 1) at ¶ 6. The District evaluated Harrison on August 28, 2018 and issued an Evaluation Report ("ER") that found him eligible for a Section 504 Service Agreement. See Compl. (ECF 1) at ¶ 9. During his senior year, Harrison participated in online school and the District's "Twilight" program which is an academic support program for students identified as being at risk for not graduating. See Compl. (ECF 1) at ¶ 10.

In November 2018, Student 1, who was also in the Twilight program made explicit threats[1] against Harrison on social media.  See Compl. (ECF 1) at ¶ 11.  Plaintiffs allege that Harrison's girlfriend reported these threats to the high school principal but that the District took no action.  See Compl. (ECF 1) at ¶ 11.   On February 5, 2019, Harrison reported to one of his teachers that he feared Student 1 was out to get him and that he was nervous about being in class with him.  See Compl. (ECF 1) at ¶ 12.  That same day, Harrison's counselor sent an email to two teachers in the Twilight program, making them aware of Harrison's concerns.  See Compl. (ECF 1) at ¶ 12.  Shortly after receiving the email, one of these teachers forwarded the counselor's email to the Twilight coordinator, stating the correspondence seemed like something he should see as well.  See Compl. (ECF 1) at ¶ 12.

The next day, the coordinator then forwarded Harrison's counselor's email to the principal, proposing a protocol[2] for how teachers should react if a situation of conflict between two or more students were to arise.  See Compl. (ECF 1) at ¶ 13.  The coordinator then emailed the two teachers, advising that he was looking into a plan for handling Harrison and Student 1, and that they should not tolerate any trouble and that at the first sign of any conflict, they should send one student out and phone the office or the cell phone of an administrator.  See Compl. (ECF 1) at ¶ 13.  The coordinator then sent another email to the teachers, instructing them to make sure Harrison and Student 1 would not be seated next to each other, and to ensure that the teachers fill their class time with activities.  See Compl. (ECF 1) at ¶ 13.  The coordinator asked for any other suggestions on how to be "reactive" to the situation and informed the principal that

---

[1] The Complaint is void of any factual allegations establishing why Student 1 made threats against Harrison or why he ultimately assaulted Harrison.

[2] The protocol specified that each student in conflict would be marked late. If there were two, one would be asked to report to the office, while the second would remain in the classroom, as the teacher would contact the principal. The principal would handle the student in the office and inform the teacher how and when to release the second student from his or her classroom. If there were three or more students involved, the same plan would be followed by attempting to send the most aggressive student to the office.  See Compl. (ECF 1) at ¶ 13.

he believed an administrator should speak with Harrison and Student 1 immediately.  See Compl. (ECF 1) at ¶ 13.  He advised the principal of the protocols he had put into place and the principal responded that the coordinator's course of action was acceptable, and that the students in such a situation should be sent home on a staggered schedule.  See Compl. (ECF 1) at ¶ 13.

During approximately the week of March 11, 2019, Student 1 made explicit threats to attack H.S. in class "while the teacher was present".  See Compl. (ECF 1) at ¶ 14.  The Complaint fails to allege that the teacher heard the threats or that Harrison reported the threats to the District.

On March 19, 2019, Harrison entered his Twilight classroom approximately five to ten minutes before class was scheduled to start, sat down in his seat and put his head down on his desk waiting for class to start.  See Compl. (ECF 1) at ¶ 15.  Student 1 then entered the room, "approached Harrison from behind, and attacked him viciously and by stealth".  See Compl. (ECF 1) at ¶ 15.  Student 1 repeatedly punched Harrison in the head, both on top of his head and on the sides of his face and broke Harrison's prescription glasses before leaving the room.  See Compl. (ECF 1) at ¶ 15.

No teacher or other District personnel was in the room at the time of the attack, though they arrived shortly thereafter and pulled H.S. into a different classroom.  See Compl. (ECF 1) at ¶ 16.  The District did not provide Harrison with medical attention despite his obvious injuries and did not call Harrison's mother.  See Compl. (ECF 1) at ¶¶ 17-18.  Harrison called his sister who rushed to the school and picked Harrison up from the school office and took Harrison to the emergency room because was unable to speak and was clearly nauseated.  See Compl. (ECF 1) at ¶¶ 18-19.  Harrison was diagnosed with and treated for a concussion, multiple contusions, and a broken right maxillary bone.  See Compl. (ECF 1) at ¶ 20.

Based on the foregoing allegations, Plaintiffs contend that the District's actions and inactions were deliberately indifferent and/or reckless and created an unsafe and even hostile educational environment. See Compl. (ECF 1) at ¶ 27. Despite unmistakable knowledge of Harrison's need for close supervision, and the likelihood that he would be harmed by Student 1, the District "permitted Harrison and Student 1 to be in the same classroom, unsupervised, leaving Harrison vulnerable to attack." See Compl. (ECF 1) at ¶ 27.

As a result, Plaintiffs brought suit against the District for compensatory damages and reasonable attorneys' fees and costs under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 and 794(a) ("Section 504"); the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12131 et seq.; and under 42 U.S.C. § 1983. Further, Plaintiffs also brought state law claims for Negligence and Recklessness and Loss of Consortium.

### III.    ARGUMENT

#### A.    Standard for Deciding Motion Under Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010) ). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550

4

U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Connelly v. Lane Const. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting Iqbal, 550 U.S. at 679).

Courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" Id. at 787 (alterations in original) (quoting Iqbal, 550 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 550 U.S. at 679). Third, "'[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (alterations in original) (quoting Iqbal, 550 U.S. at 679).

After the Supreme Court's decision in Twombly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. This standard asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Accord Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed me accusation.") (internal quotation marks omitted).

**B**.   **Counts I and II Should be Dismissed With Prejudice**

In Count I and II of Plaintiffs' Complaint, Plaintiffs allege claims of disability discrimination under Section 504 and the ADA. To support the Section 540 claim, Plaintiffs allege that the District "discriminated against Harrison on the basis of his disability, and denied him the equal benefits of his educational program, by failing to provide him with a safe, non-hostile, appropriate, and properly supervised educational program and environment where he

5

would be free from harm, ultimately causing the assault described herein." See Compl. (ECF 1) at ¶ 37. To support the ADA claim, Plaintiffs allege that the District "discriminated against Harrison by failing to provide him with a safe, appropriate, non-hostile, and properly supervised educational program and environment that was free from assault, ultimately causing the abuse, injuries, and damages described herein. The District's refusal to reasonably accommodate Harrison's disabilities permitted these incidents to occur. The District also caused Harrison further emotional trauma by failing to separate him from Student 1, despite the District's knowledge of Harrison's vulnerability to being attacked." See Compl. (ECF 1) at ¶ 51.

In the school context, a plaintiff alleging disability discrimination pursuant to Section 504 and the ADA must show that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." D.C. v. Pittsburgh Pub. Sch., 415 F. Supp. 3d 636, 657 (W.D. Pa. 2019); quoting Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

Further, "[i]f a plaintiff seeks compensatory damages for a § 504 or ADA violation, the plaintiff must also show that the discriminatory conduct was intentional." D.C. v. Pittsburgh Pub. Sch., 415 F. Supp. 3d 636, 657 (W.D. Pa. 2019); quoting S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 262 (3d Cir. 2013). In order to establish intentional discrimination, the plaintiff must plead facts showing "at least deliberate indifference." Id; quoting Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir. 2018). Further, in order to plead deliberate indifference, the plaintiff must allege, first, that the defendant school district had "knowledge that a federally protected right is substantially likely to be violated." Id; quoting S.H., 729 F.3d at 265; Haberle, 885 F.3rd at 181. Additionally, as the Court in D.C. v. Pittsburgh Pub. Sch. explains:

6

> Such knowledge must be actual, as "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." S.H., 729 F.3d at 266 n.26. Second, the plaintiff must allege that the defendant "fail[ed] to act despite that knowledge." Id. at 265; Haberle, 885 F.3rd at 181. The failure to act in the face of the requisite knowledge must be "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." S.H., 729 F.3d at 263 (internal quotations omitted).

D.C. v. Pittsburgh Pub. Sch., 415 F. Supp. 3d 636, 657 (W.D. Pa. 2019).

Plaintiffs Section 504 and ADA claims fail for several reasons. First, Plaintiffs have failed to plead any facts which establish that Harrison was denied the benefits of the District's program or was otherwise subject to discrimination **because of** his disability status by the District. The Complaint fails to plead any facts showing that he was assaulted because he was disabled or that the District treated him in any manner differently from other students due to his disability status. Plaintiffs fail to allege Student 1's disability status or whether the Twilight program was solely for students with disabilities. Nowhere do Plaintiffs allege any facts concerning the "reasonable accommodation" which the District allegedly refused to provide or how that had anything to do with Harrison being assaulted. Plaintiffs have failed to plead any facts that could support the conclusion that but for Harrison's disability, the March 19, 2019 incident would not have occurred. To the contrary, based solely on the allegations of the Complaint, Harrison's disability status had nothing to do with his assault.

Second, the Complaint includes no facts to establish either that the District failed to act in the face of the threats. The Complaint is clear that appropriate steps were taken by the District to mitigate any potential for conflict between Harrison and Student 1. In fact, as plead throughout the Complaint, the District took action in setting up a protocol on how to avoid and/or handle potential conflict between Harrison and Student 1 after becoming aware of the threats being

7

made against Harrison. Such protocol established and implemented by the District was clearly successful for over six (6) weeks. There are no allegations that Harrison suffered any harm between February 5, 2019 and March 19, 2019. The Complaint improperly seeks to hold the District liable for failing to prevent the assault rather than for deliberate indifference.

As such, this Court should dismiss Counts I and II of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

### C. Count III Should be Dismissed With Prejudice

In Count III of Plaintiff's Complaint, Plaintiffs allege claims of Negligence and Recklessness.

Not only did Plaintiffs fail to plead any facts to support a claim for Negligence or Recklessness against the District, Plaintiffs are precluded from bringing these claims against the District pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"). The PPSRCA provides that "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." See 42 Pa.C.S.A. § 8541. As such, local government agencies are generally immune from tort liability under the PPSTCA. Wells v. Harrisburg School District, 884 A.2d 946 (Pa.Cmwlth.2005) (finding school districts are local government agencies for purposes of 42 Pa.C.S. § 8541–42 immunity provisions).

There are limited exceptions to such immunity and an injured party may recover in tort from a local governmental agency if:

> (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight[3] enumerated categories.

---

[3] There are now 9 exceptions.

Wells, 884 A.2d at 948 (citing 42 Pa.C.S. § 8542). None of the enumerated exceptions covers failure to prevent a third party, non-sexual assault. See 42 Pa.C.S. § 8542(b)(1)-(9).

To the extent that Plaintiffs are alleging an intentional tort, it too is barred. Pursuant to the PPSTCA, "a local agency is immune from liability for state-law intentional torts." Kessler v. Monsour, 865 F. Supp. 234, 241 (M.D. Pa. 1994); citing Amnesty America v. County of Allegheny, 822 F.Supp. 297, 301 (W.D.Pa.1993).

### D. Count IV Should Be Dismissed With Prejudice

In Count IV of Plaintiff's Complaint, Plaintiffs allege claims under Section 1983 under the state created danger theory.

"As a general matter ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 197 (1989). A claim of state-created danger is one of two narrow exceptions to that general rule. To prevail on this theory, Plaintiffs must prove the following four elements: 1) the harm ultimately caused was foreseeable and fairly direct; 2) a state actor acted with a degree of culpability that shocks the conscience; 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013) (en banc).

[A]s to the fourth element, there must be "an allegation and subsequent showing that state authority was affirmatively exercised." Bright v. Westmoreland Cty., 443 F.3d 276, 282 (3d Cir.

9

2006). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id. The Third Circuit has explained the issue raised under the fourth element is whether "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Bright, 443 F.3d at 283. The purpose of the fourth element is to distinguish cases where state officials might have done more, from cases where officials created or increased the risk itself. Morrow, 719 F.3d at 179.

In cases alleging state created danger, courts have routinely rejected attempts to find liability for peer-to-peer bullying based on the state created danger theory. For example, in Morrow, two high school students sued their school for failing to protect them from another student who was bullying them persistently. The school at one point temporarily suspended the bully but then allowed her to return to school, contrary to a school policy requiring expulsion of students adjudicated "guilty of a crime." The Third Circuit concluded that the school's failure to enforce its own disciplinary policy was not equivalent to an "affirmative act." Morrow, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act...."). See also Buonadonna v. Southeast Delco Sch. Dist., 2015 WL 2365629, at *2, n.6 (E.D. Pa. May 18, 2015)("[A] school's alleged failure to follow its own policies generally does not rise to the level of an affirmative act for the purposes of a state-created danger claim.").

In the matter at hand, Plaintiffs allege that the "District allowed Student 1 to be assigned to the same classroom after it knew of Student 1's threats against Harrison, and in permitting them to be present in the same classroom, without adult supervision or any other safeguards to prevent Student 1's assault of Harrison, after the District's employees discussed extensive plans to prevent such an assault, shock the conscience" See Plaintiff's Complaint at ¶ 70.

However, these allegations are no more than what was alleged in Morrow. In Morrow, the allegation was that the school temporarily suspended the bully but then allowed him to return to school, contrary to a school policy requiring expulsion of students adjudicated "guilty of a crime." The Third Circuit found this to be insufficient. In fact, these allegations are less compelling than in Morrow where the school allowed the bully to come back to school after a suspension in violation of its own policies. Here, the District was only notified of a ***potential*** conflict between the two students as there had been no actual physical incidents between the two. Then, when District was notified of concern for a potential conflict between Harrison and Student 1, the District took immediate action in setting up a protocol on how to avoid and/or handle potential conflict. Such protocol was clearly successful as there had been no incidents for over six (6) weeks after implementation of said protocol.

Recently, this Court has had occasion to address very similar allegations and held that:

> But merely placing a student in a classroom environment with his victim is not an affirmative act by which a state actor can be liable for creating danger for students. In Roquet v. Kelly, the court rejected arguments that "actively placing [victim] and [assailant] into the same gym class, despite the long history of bullying" or "placing [assailant] in an unstructured and unsupervised environment thereby rendering [victim] and other students more vulnerable to danger" could constitute the requisite affirmative act for liability. See No. 4:11-cv-1763, 2013 WL 5570269, at *7–8 (M.D. Pa. Oct. 9, 2013); see also Morrow, 719 F.3d at 177–78 (permitting a student to return to his victim's class after a suspension for a prior attack is not an affirmative act). To hold otherwise would significantly expand schools' potential liability for their students' actions, and the Court declines to do so here.

Henry v. School District of Philadelphia, 2021 WL 185047 * 4 (E.D. Pa. Jan. 19, 2021).

As a result, Plaintiffs have failed to state a claim for which relief can be granted under 42 U.S.C. Section 1983 based on state-created danger.

### E.     Count V Should Be Dismissed With Prejudice

In Count V of Plaintiff's Complaint, Plaintiff Constance Sorman brings a claim for Loss of Consortium.

Pennsylvania Courts have consistently refused to recognize a claim for a loss of consortium on behalf of parents whose child is injured. *See e.g*. Quinn v. City of Pittsburgh, 243 Pa. 521, 90 A. 353 (1914); McCaskill v. Philadelphia Housing Authority 419 Pa. Super. 313, 318–19, 615 A.2d 382, 384 (1992); Schroeder v. Ear, Nose and Throat Assoc., 383 Pa.Super. 440, 557 A.2d 21 (1989), appeal denied, 523 Pa. 650, 567 A.2d 653 (1989); Brower by Brower v. City of Philadelphia, 124 Pa.Cmwlth. 586, 557 A.2d 48 (1989), appeal denied, 525 Pa. 604, 575 A.2d 569 (1990). Therefore, Constance Sorman is barred from bring a claim for Loss of Consortium as she is not Harrison's spouse.

Additionally, Plaintiffs are also barred from bringing a claim for Loss of Consortium as the District is immune from such tort liability pursuant to the PPSTCA. Suniaga v. Downingtown Area School District, 2020 WL 7062361 *18 (E.D. Pa. Dec. 2, 2020).

### IV.     CONCLUSION

Based on the foregoing, the Defendants respectfully request this Honorable Court grant the Defendants' Motion to Plaintiff's Complaint with prejudice.

                     Respectfully submitted,

                     **WISLER PEARLSTINE, LLP**

                     **By:** *Michael D. Kristofco*
                     **MICHAEL D. KRISTOFCO, ESQUIRE**
                     460 Norristown Road, Suite 110
                     Blue Bell, PA  19422
                     (610) 825-8400
                     *Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRISON SORMAN, and<br>CONSTANCE SORMAN,<br>    Plaintiffs,<br><br>v.<br><br>HAVERFORD AREA SCHOOL<br>DISTRICT<br>    Defendants. | :<br>:<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO. 21-1305<br>:<br>:<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Motion to Dismiss Plaintiff's Complaint and Memorandum of Law in Support was served upon all counsel of record via CM/ECF:

WISLER PEARLSTINE, LLP

Date: May 28, 2021                         By: *Michael D. Kristofco*

**MICHAEL D. KRISTOFCO, ESQUIRE**
PA Bar Nos. 73148
460 Norristown Road, Suite 110
Blue Bell, PA  19422
(610) 825-8400
*Attorneys for Defendants*